UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CORY PORTER,

    Petitioner,

v.                                CASE: 8:09-CV-753-T-17TGW

KRISTIN GONZALEZ,

    Respondent.

_____

## REPORT AND RECOMMENDATION

This case was initiated by Petitioner Cory Porter's Petition for Return of a Child (Doc. 1). The petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, known as the "Hague Convention" or "Convention," which is embodied in the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. 11601-11610. The petitioner, a citizen of the United States and resident of Australia, seeks the return of his son, CP, to Australia, their habitual residence. The petitioner alleges that the child was wrongfully retained in the United States in September 2008 by his mother, respondent Kristin Gonzalez.

Following a referral for an evidentiary hearing, I find that the petitioner has established that the child was wrongfully retained by his mother in the United States from his habitual place of residence in Australia. The respondent has made no cogent argument why Australia is not his habitual residence. Moreover, she brought forth no contrary evidence indicating otherwise. Accordingly, I recommend that the child be returned to Australia, where the custody issue can be resolved in the Australian courts.

I.

At the outset, an explanation of the Hague Convention is warranted.[1] The purpose of the Convention is to protect children internationally from the harmful effects of their wrongful removal or retention and to establish legal rights and procedures to return children who have been wrongfully removed or retained from their country of habitual residence. See Hague Convention, Art. 1; 42 U.S.C. 11601; Hanley v. Roy, 485 F.3d 641, 644 (11th Cir. 2007). Australia and the United States are signatories to the Convention. See Feder v. Evans-Feder, 63 F.3d 217, 221 (3rd Cir. 1995).

---

[1] The citation to the Hague Convention is T.I.A.S. No. 11670.

The object of the Hague Convention is "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Hague Convention, Art. 1; Lops v. Lops, 140 F.3d 927, 935 (11th Cir. 1998), cert. denied, 525 U.S. 1158 (1999). The United States Congress, in its findings incidental to implementation of the Hague Convention into United States law, found that "[p]ersons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention" and that "[c]hildren who are wrongfully removed or retained ... are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies." 42 U.S.C. 11601(a)(2), (4). In this regard, the Convention "intends to restore the pre-abduction status quo and deter parents from crossing borders in search of a more sympathetic court for custody hearings." Hanley v. Roy, supra, 485 F.3d at 644-45.

Under the Convention, a child is considered wrongfully retained where retention "... is in breach of rights of custody attributed to a person ... under the law of the State in which the child was habitually resident

immediately before the removal or retention ... and ... at the time of removal or retention ... those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention ..." Hague Convention, Art. 3. Pursuant to Article 11 of the Convention, "the judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children."

This court has jurisdiction to adjudicate a claim of wrongful removal pursuant to ICARA. 42 U.S.C. 11603. However, it only has jurisdiction to decide the merits of the wrongful retention claim, not the underlying custody dispute. 42 U.S.C. 11601(b)(4); Lops v. Lops, supra, 140 F.3d at 936.

The petitioner bears the burden of establishing by a preponderance of the evidence that the child was wrongfully retained under the law of the State in which the child was habitually resident immediately before the child's retention. 42 U.S.C. 11603(e). If the petitioner satisfies that burden, the respondent can attempt to demonstrate an affirmative defense. The petitioner has clearly met his burden. The respondent has alleged no affirmative defenses, not even in an untimely fashion.

II.

On April 21, 2009, the petitioner instituted this action by filing a petition for the return of his child pursuant to the Hague Convention and ICARA (Doc. 1). The petition also sought a show cause order (id., p. 10). Subsequently, an Order to Show Cause why the minor child has been kept from his habitual place of residence in Australia was entered by United States District Judge Elizabeth A. Kovachevich, prohibiting the respondent from removing the minor child from the jurisdiction and requiring that the child's passport be surrendered (Doc. 3).[2]

The verified petition was referred to me to conduct an expedited hearing (id.). A hearing on the petition was scheduled for May 8, 2009 (Doc. 14). However, the evidentiary portion of the hearing was continued to allow for the petitioner to travel to the United States from Australia and also to provide the respondent, who had just retained counsel, additional time to

---

[2]On May 7, 2009, the day before the first hearing on the matter, Karen Gonzalez, mother of the respondent, filed an affidavit asserting that the child's passport could not be submitted to the court, because it had been lost or stolen (Doc. 13). I issued a warning at the hearing, upon pain of contempt, that the passport needed to be located or an expedited passport obtained. On May 13, 2009, the child's original passport was located and deposited with the Clerk (Docs. 16, 17).

respond to the petition. I strongly urged the parties to resolve this matter between themselves in the best interests of the child. The respondent did not subsequently file any answer.

The parties did not settle the matter and, at 12:22 p.m. on June 8, 2008, the day of the 2:00 p.m. evidentiary hearing, respondent filed a motion to dismiss and stay this action (Doc. 19). However, in accordance with the mandate in Article 11 of the Convention providing for the expeditious resolution of proceedings brought pursuant to its provisions, I conducted the evidentiary hearing on the petition, essentially denying the motion to dismiss and to stay.[3] Testimony was received from the petitioner and the respondent.

The evidence at the hearing showed the following. The petitioner, a citizen of the United States, who has been a resident of Australia for the past two years, is the father of CP. The respondent, also a United States citizen, is the mother of CP. The petitioner and the respondent began dating and, on August 13, 2002, their son, CP, was born in Florida (Doc. 1,

---

[3]The motion was subsequently referred to me for disposition (Doc. 21). I have entered an Order confirming the action taken at the time of the hearing.

Ex. A). The petitioner and respondent never married, but cohabited in Florida, with their child, until their personal relationship ended in 2003. Subsequently, the parties shared custody of CP. The petitioner maintains that CP spent the majority of the time living with him in Florida. The respondent claims that they shared custody equally. The evidence indicates, however, that CP primarily resided with the father for an appreciable period of the child's life. Thus, a mediation agreement, signed in November 2006, states: "The parties also acknowledge that the minor child has been primarily residing with the Father for the last several months" (id., Ex. A, ¶ 1).

The petitioner and an Australian woman met in Florida and they decided to marry. The petitioner informed the respondent of his intention to move to Australia with his fiancée. Subsequently, the parties agreed, pursuant to the mediation agreement, that CP would, among other things, accompany his father to Australia, live with petitioner indefinitely, and begin school there (id., Ex. A). On May 15, 2007, approximately four months prior to petitioner's wedding in Australia, the child and father moved there with the respondent's permission.

The parties agreed that the child would visit the respondent for two weeks in Florida from September 21, 2008, through October 5, 2008, and that the child would return to Australia to resume his schooling. Thus, on September 21, 2008, the respondent flew to Australia to accompany the child for the visit to the United States. She acknowledges that she purchased a round-trip ticket for the child. However, on October 2, 2008, respondent informed the petitioner over the telephone that she would not be returning the child.

On October 14, 2008, the petitioner filed with the Australian Central Authority an application for the return of a child (id., Ex. B). The respondent, however, would not voluntarily return the child to Australia (id., p. 52). Accordingly, the petitioner filed this suit under the Hague Convention.

### III.

In order to establish wrongful retention under the Convention, the petitioner must establish by a preponderance of the evidence (Hanley v. Roy, supra, 485 F.3d at 645):

> (1) the child has been removed or retained [from his State of habitual residence] ... in violation of the petitioner's "rights of custody" (i.e., "rights relating to the care of the person of the child ... either jointly or alone"); and (2) "at the time of removal or retention ... those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention...."

In this case, it is undisputed that Florida, where the child was born and resided, was CP's habitual residence at the beginning of his life. After the petitioner and the child moved to Australia, with the respondent's permission and pursuant to a court-approved mediation agreement, that habitual residence clearly shifted to Australia.

Neither the Hague Convention nor ICARA defines the term "habitual residence." However, "[c]ourts have been instructed to interpret the expression according to 'the ordinary and natural meaning of the two words it contains, as a question of fact to be decided by reference to all the circumstances of a particular case.'" Ruiz v. Tenorio, 392 F.3d 1247, 1252 (11th Cir. 2004), citing Mozes v. Mozes, 239 F.3d 1067, 1071 (9th Cir. 2001).

In November 2006, the parties agreed to partial custody arrangements in Pinellas County Circuit Court (Doc. 1, Ex. A). The

respondent agreed, most pertinently, that the child could live in Australia indefinitely, attend school there, and apply for dual citizenship in Australia (id.). The agreement, which the respondent signed, states that "[t]he Mother consents to the Father's plan to take the child with him to reside in Australia" (id., Ex. A, p. 1). It provides further that "[t]he Mother consents to the Father obtaining a Court Order approving this Agreement and granting the Father permission to take the minor child to Australia and apply for the status of permanent immigration" (id., Ex. A, p. 2).

The agreement was approved by the report and recommendation of a general magistrate, who noted that the agreement "was entered into freely and voluntarily, and quite thoughtfully by the parties" (id., p. 30). The Pinellas County Circuit Court adopted that report and recommendation.

In Australia, the child resided with his father, step-mother, and step-sister, and attended pre-school and then kindergarten (id., p. 25). At the time of the move on May 15, 2007, the child was only four years and nine months old. Prior to his retention by the respondent, he lived in Australia for over sixteen months (id., p. 24). His travel to the United States was a visitation, as contemplated by the mediation agreement, and was not a change

of habitual residence. Accordingly, Australia was the child's habitual residence at the time of his removal.

The petitioner contends that he possessed "rights of custody" at the time of the child's retention, pursuant to the Pinellas County court order, which was recognized by Australia (id., p. 24, ¶ 6). See Hanley v. Roy, supra, 485 F.3d at 645 ("the existence of 'rights of custody' are determined by the law of the country in which the child habitually resides at the time of removal"). Australian law provides that a parent has a right to custody over a child within the meaning of the Hague Convention, unless an order of a court provides that the parent has no parental responsibility for the child. Family Law Act of 1975, § 111B(4)(Austrl.); see Doc. 1, pp. 49-52.

The respondent does not dispute that the petitioner has custody rights under Australian law, but relies heavily upon the argument that the mediation agreement is void. She contends that, because the petitioner did not comply with paragraph 4, which requires the father to pay certain transportation costs and allowed for visitation between June 29, 2007, and December 22, 2007, he did not have custody rights under the agreement. This contention is meritless for several reasons.

In the first place, the respondent has not demonstrated that there was a breach of paragraph 4. Thus, she never made a demand for specific dates when the child would travel to the United States, other than Christmas, which is not a time period available under the agreement.

Furthermore, a breach of contract does not generally render a contract void, and the respondent has cited no authority indicating that the mediation agreement is an exception to that rule. A breach would simply have allowed the respondent to go to court to obtain relief. The respondent made no such effort, even though the agreement had been approved by the Pinellas County Circuit Court.

In all events, even if the mediation agreement were void, it would not change the fact that Australia was the child's place of habitual residence. Thus, the child's habitual residence is not based upon the mediation agreement, but is determined by the circumstances regarding where he was living. The facts show that the child's habitual residence was Australia.

The petitioner must also show that he was exercising his custody rights at the time of removal. In this connection, it is noted that courts define

"exercising custody" broadly and find that a parent is exercising custody "whenever a parent with de jure custody rights keeps, or seeks to keep, any regular contact with his or her child." Friedrich v. Friedrich, 78 F.3d 1060, 1065 (6th Cir. 1996). There is no question that the petitioner clearly has shown that he was exercising his rights at the time of the children's retention. Thus, the undisputed testimony shows that the child lived exclusively with petitioner and that he provided most, if not all, of the financial support for the child prior to removal.

IV.

In sum, the petitioner has established that the respondent's failure to return the child to his habitual residence in Australia violated his rights of custody, and was therefore wrongful under the Convention. Therefore, I recommend that the Petition for Return of Child to Petitioner (Doc. 1) be granted, and that, in accordance with Article 1a of the Convention, CP be returned promptly to Australia.

Respectfully submitted,

THOMAS G. WILSON
DATED: JUNE 16, 2009    UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).